## SANITARY PRODUCTS CORPORATION v. INDIVIDUAL DRINKING CUP CO.

(Circuit Court of Appeals, Third Circuit. February 14, 1921.)

No. 2598.

Patents ⟨⟩328—1,043,854, claims 1–3, 6, for cup dispensing device not infringed.

The Luellen patent, No. 1,043,854, claims 1–3, 6, for a cup-dispensing device, as limited by the prior art, *held* not infringed.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Suit in equity by the Individual Drinking Cup Company against the Sanitary Products Corporation. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 267 Fed. 196.

O. Ellery Edwards, Jr., of New York City, for appellant.

Dunn, Goodlett, Massie & Scott, of New York City (Clifford E. Dunn and C. A. L. Massie, both of New York City, of counsel), for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and BODINE, District Judge.

BUFFINGTON, Circuit Judge. In the court below, the plaintiff, the present owner of patent No. 1,043,854, granted November 12, 1912, to Luellen, for a cup-dispensing device, brought suit against the defendant, charging infringement of claims Nos. 1, 2, 3, and 6 thereof.

The validity of this patent having been theretofore upheld in another District Court of the circuit (see Individual Drinking Cup Co. v. United States Drinking Cup Co., 220 Fed. 331), the court below followed that decision and confined itself to the question of infringement. Its opinion, reported at 267 Fed. 196, found, and a decree following it adjudged, the defendant infringed claims Nos. 1, 2, 3, and 6 thereof. To that question of infringement we also confine ourselves, but, by way of safeguarding ourselves, and to avoid confusion, we note the subject-matter to which this patent was, and that to which it was not, addressed.

Touching the latter matter that to which the patent is not addressed, we note that the widespread use of individual articles of different sorts was something that was in existence long before this patent was granted, and that with the creation of a demand for such individual articles Luellen had nothing to do. He found, for example, existing, economical, serviceable, individual paper cups in wide use, and his object was to find novel means to deliver such individual cups, and thereby share in an already existing market.

But, in seeking to invent a new device, he found at hand the devices and inventions of many men, who had in the last few years labored in this same field of automatic, mechanical supply of individual articles to individual users, and in the art many machines with slot receipt of coins and resultant delivery of individual articles, surprising in number, variety, and volume. It will thus be seen that Luellen entered a well-tilled field, in which were many inventions, and wherein mechanical advance of novel, additional, and useful improvements would naturally be expected from those who were making self-delivering devices for these almost numberless articles of individual use, each of which presented its own individual problem, due to size and proportions.

We will, as the court below did, assume for present purposes that Luellen made an invention in this well-occupied field; so we turn to his patent to ascertain, first, what was the invention he made and disclosed, and, second, what was the range of invention his claims covered. For we who administer the patent laws have need to keep constantly in mind not only the statutory requirements, but the further fact that the consideration the patentee renders for the grant of his patent, is that—

"Before any inventor * * * shall receive a patent for his invention, he * * * shall file * * * a written description of the same * * * in such * * * exact terms as to enable any one skilled in the art * * * to make * * * and use the same."

Bearing this statutory prerequisite in mind, we turn to Luellen's patent to learn what was the invention he made, disclosed, and claimed. Now, it is quite evident that the general idea of a storage chamber for paper drinking cups was not original with him, nor was the idea of withdrawing a cup from such chamber by a user. Indeed, he neither said in his application, nor did he present or obtain any claim for such single features. What he did disclose was a particular type of storage container and a particular mode of withdrawing cups from such container. To that end he showed a tube vertically held in place on and

by an enveloping standard. This tube had two elements, each and both so functionally necessary that, if either were omitted, his device would not work. Take, for instance, the element, "a receiving chamber," one found in every claim here involved. In that respect his invention disclosed a tube which functionally became "a receiving chamber" by reason of its having an opening at its top, which top opening alone permitted the introduction into the tube of the cups, and thereby enabled the tube to become that stipulated and functioning element of all the claims which was described as "a receiving chamber."

We use the word "alone" advisably—"alone permitted the introduction into the tube of the cups"—for it will be noted that the other end of the tube, in order to constitute it "a delivery opening," and thus meet another requirement found in every claim, was restricted and narrowed to such an extent that the cups could not be inserted through the lower end of the tube, but only through the open top. It follows, therefore, first, that the device disclosed by Luellen and the invention he claimed to make, had as its central and dominant feature, a tube, chamber or container in which the cups had to be inserted from the top; and, secondly, that unless an opening was made at the top and the cups inserted at the top, the device would not work. And no other kind of a chamber was described or suggested in his specification. Such being the case when he put the element "a receiving chamber" in each of his claims, it is clear that his disclosed invention was accurately and functionally described, and therefore fully and functionally protected, by giving to that element, "a receiving chamber," a construction which applied to the top-opening and top-receiving tube which, and which alone, he disclosed.

Now, without entering into details, what we have said as to the element of "a receiving chamber" substantially applies also to the element "a delivery opening." To make the tube function, and the device of Luellen operate and deliver the cups, the lower end of the tube had to be contracted; for if it was not contracted, it would not retain the cups, and therefore could not deliver them as needed. It will therefore be seen that the gist and entire functional operative capacity of the tube of the invention was a tube open at the top to receive, and contracted at the bottom to retain and deliver. This was the alleged invention he disclosed, this was the invention the public was entitled to use at the end of his monopoly. If he had in view any other form of tube or device, he did not disclose it, and therefore did not meet the statutory requirement, namely:

"A written description of the same * * * in such exact terms as to enable any one skilled in the art * * * to make * * * and use the same."

In view of the restricted field open to Luellen's inventive effort, and of the fact that none of the elements of his claims are in themselves novel, and that novelty and invention, if found, must be found in a new combination of old elements, we are of opinion the claim is correspondingly restricted, and should not be expanded to cover subsequent advances in this art, which used other forms and appliances

which functioned in different ways. Indeed, to expand Luellen's limited claims, and give them a broad, sweeping construction, might endanger his patent. Take, for example the functional anticipatory significance of patent No. 570,113, granted October 27, 1886—13 years before Luellen—to Wilson for a cork cabinet. Without entering into details, it suffices to say that Wilson showed 14 tubes of different sizes, adapted to chamber and deliver 14 different sizes of corks. These tubes were vertically attached to the inside of a swinging cabinet door. The tubes were open at the top, and the corks were introduced at this open top, and this open top made the tube function as a cork-receiving chamber. The tube was contracted at the bottom, so as to cause the upper and larger end of the cork to retain and store itself and the corks above it in the tube, while the lower and smaller end of such lowest cork protruded from the lower end of the tube.

Physically and functionally, Wilson's individual delivery mechanism initially received, and thereafter stored, retained, and delivered, flexible corks in precisely the same mechanical and functional way that Luellen's did flexible cups. Indeed, the functional operative likeness of the two devices is such that to differentiate them we must resort to sanitation grounds, and those grounds of a very narrow sort. After Luellen's cups were put into the top of his tube, as stated in his patent, the "top of the tube is closed by a cap or cover 16 to exclude dirt." In Wilson's device the open top of his tube would only be closed, and then but relatively so, by the top of the cabinet when the door was shut, but as in the practical use of the cabinet in a drugstore, the door would usually be left open to allow quick access to the corks, and as no suggestion of sanitation or hygiene was made in Wilson's patent, it is fair to say that the top closure he made was a mere mechanical incident with no functional purpose. The mechanical operative difference between these two devices being thus restricted, not even to open-top charging of their tubes, but solely to the closing of those open tops after they are charged, it would seem to follow that the tight closing of Luellen's top-open tube as contrasted with Wilson's loose closing tube, is the substantial novel mechanical element which alone differentiated his flexible-cup delivery device from Wilson's flexible-cork delivery device, and if the presence of this top closure is of such substance as to involve invention over Wilson, it follows that the absence of such top closure in a later flexible-cup delivery device is of like substance to avoid infringement.

Applying the above general principle and reasoning to the device of the defendant, it necessarily follows that infringement was not shown. The defendant's device has a solid glass tube, the upper globular end of which cannot be opened, and its lower end is of the same diameter as the tube body. Its construction is such that the tube cannot be filled with cups from the top, it can and must be filled from the bottom, and when filled the lower end of the tube, being of the same size as the body of the tube, neither retains the cups in storage, and has no functional agency in discharging the stored cups; but both retention and discharge are effected by devices below the lower end of the tube, which are not functionally effected by any modifying action of the tube itself.

We are therefore of opinion the device of the defendant does not in-

fringe, and the decree of the court below, granting an injunction on these claims, must be vacated.

The defendant is also charged with infringement in its sale of a paper carton in which nested paper cups are shipped, and from which, where the carton is hung upon a wall, they can be withdrawn one by one.

Bearing in mind the limited field, as above stated, of the patent in suit, we note this paper carton or container differs from the disclosure of the patent in suit in several particulars. In addition to being a dispensing chamber when the cups are being used, it brought into the art the additional function of being a shipping box, and a difference when used as a dispenser, in that it is fragile and temporary and is only used once. In that respect it is unlike the permanent and substantial chamber of the patent. But, apart from these structural differences, its restraining paper lugs at the foot of the carton, which hold the nested cups in place, make the chamber functionally different from the tapering, narrowed delivery end of the plaintiff's patent, in that the former are flexible, and themselves fall back into the wall of the paper tube, and this functional feature permits the nested cups being packed in the tube from below, a thing impossible in the practical use of the patentee's device.

Without entering into a further discussion, it suffices to say we regard this square paper carton adapted by its new element of flexible, yielding cups, to receive cups from below, to constitute a functionally different combination from that disclosed by the patent, and therefore not an infringement.